[No. 10,555.—Department One.]

## PEOPLE *v.* AH OON ET AL.

GAMBLING—GAME OF TAN.—It cannot be said, as a matter of law, with reference to the game of tan, that there can be two dealers in only one game, or that the same game can be played at the same time at two separate tables. *Held,* accordingly, that an instruction to that effect, given upon the trial of an information against three defendants jointly for dealing and carrying on that game, was a statement of a fact, and therefore violative of the Constitution. (Art. vi, § 19.)

APPEAL from a judgment of conviction, and from an order denying a new trial, in the Superior Court of Fresno County. HOLMES, J.

*Creed & Edwards*, for Appellants.

The *Attorney-General*, for Respondent.

McKINSTRY, J.:

The information alleged that defendants, jointly, on, etc., " did deal and carry on a certain banking game, commonly known as 'tan,' with certain devices," etc. A verdict of guilty was rendered against all.

As part of its charge, the Court instructed the jury: " If the evidence shows that one or more of defendants were guilty of playing at one banking game, and one or more of defendants at another, and the defendants were not playing at the same time and place, *and in the same game*, the jury must acquit."

The jury returned into Court for further instructions. Then took place certain proceedings, which are herein after recited at length, not because they exhibit an exemplary model of the decorum which should characterize the demeanor of counsel, but in order that it may be made to appear that the jury must have been, or at least may have been, *led up* to their verdict by assertions of fact emanating from the bench.

After retiring to their room for deliberation as to a verdict, the jury were returned into Court, and were in the jury box at the time the reporter entered the room, whereupon the following proceedings were had:

The Court (to the reporter).—You may state that the jury came in and asked the Court—

Mr. Edwards.—If the Court please, I would like for the juror to state what he is asking for, and for the reporter to take it down.

The Foreman.—The jury asked instructions or an explanation from the Judge as to the meaning of one of the instructions, as to whether it means, that, if part of defendants were playing the game at one table and part at another table, and all the same game, whether they were instructed that the defendants were not guilty; or as to whether part of the defendants were playing at one table and part at another, and at a different game, that they were not guilty? That is the thing we desire to know.

The Court.—The Court instructs the jury that, from the reading of the instruction, that the expression, or the words, " at one game," does not change the character of the game charged in the indictment of tan; that the *same game can be carried on at two separate tables, and still preserve the same characteristics.* If the words " at table " had been used instead of " at game," it would alter the instruction. Is that all you desire?

Mr. Edwards.—I will except. The jurors have now the Court's construction. If they want further instructions, they can return again. If anything further is to be done, the Court has instructed them as to the construction of that instruction. Now it is for them to retire, without any more being said, to deliberate on their verdict.

The Court.—No more than what the Court might see proper to give.

Mr. Grady.—I desire to put it right here on the minutes.

A Juror (Mr. Marks).—Would your Honor allow me to state the case on behalf of one or two of the jurors?

The Court.—Yes, sir.

Mr. Marks.—I will do it in their behalf partly, and partly in my own. The difficulty is this: We do know that two of these defendants were caught at one table and one at another table. That we know. Now, after we conclude that all three of them are really guilty of playing the game prohibited by law, then we understand that the instruction—the last instruction—is, that if two of the parties were in one game and one of the parties at another table in another game of the same kind, that we must acquit.

The Court.—At another table—

Mr. Marks.—At another table and in another game ; but both being guilty of playing the game prohibited by law, we must, nevertheless, acquit, although it was nevertheless the same game ; that is to say, if the tables were put together, and there was only one dealer, they would be in the same game, but there were two games of the same kind.

The Court.—There could be two dealers and only one game.

Mr. Edwards.—The defendants except to the instructions given orally, not in writing. Defendants except to what the Court states to the juror orally.

The Court.—Haven't you taken it down, Mr. Reporter?

The Reporter.—Yes, sir.

Mr. Grady.—I will ask the Court now to instruct the jury in writing.

Mr. Edwards (to Mr. Grady).—I object to your saying anything.

Mr. Grady.—I have a perfect right to ask the Conrt for an instruction.

Mr. Edwards.—I except to the counsel insisting on talking.

Mr. Grady.—I have a perfect right to ask the Court a proposition at any time. The gentleman says I have no right to speak. I ask the Court this: to instruct the jury in writing, that it makes no difference how many tables, nor how many different games the defendants were playing, if the jury believe the defendants were engaged in carrying on the game of tan for money at the time alleged in the information; it makes no difference as to the number of tables or the number of games; that if it was the same kind of game played by these defendants at that time. I ask the Court to give this instruction in writing.

Mr. Edwards.—Now defendants except to the foregoing statement made by counsel for the prosecution in the presence of the jury, without any authority whatever, asking the Court to instruct differently from what he. had already instructed; to change the instructions and reinstruct the jury, when they have come in to ask for advice and been advised—after the jury have been instructed and retired for deliberation, and have come in and asked for a construction of an instruction that has been given.

A Juror.—Will you allow me to make one suggestion? I understand that we merely want instructions that will allow us to use our option in the matter. We want instructions that will allow us to use our option in the matter.

The Court.—The jurors have that.

The Juror.—We didn't understand it so before; we thought the instructions were to bring in a verdict one single way.

Mr. Edwards.—The defendants except to the conversation had between the Court and the juror, it being oral and not in writing, on the ground that the Court has no authority to have any communication with the jurors, except upon written instructions.

Mr. Grady.—That's all right; *the Court ain't giving no instructions.*

Mr. Edwards.—I only objected to the conversation. .

The Court.—Mr. Reporter, you have taken down all I have said in your notes?

The Reporter.—Yes, sir.

The Court (reading from paper).—The Court will instruct the jury that they have the discretion to acquit or convict from the evidence, and that the words " at the same game," as' used in the last instruction, do not change the character of the game as charged in the information; *that the same game can be played at the same time at two separate tables, and yet constitute the same game.*

A Juror (Mr. Marks).—That is clear ; I understand that.

Mr. Edwards.—The defendants except to the last instruction given by the Court.

The jury then retired for deliberation, and upon being returned into Court soon thereafter, the following proceedings were had :

The Clerk (after having called the list of jurors, and all responding to their names).—Gentlemen, have you agreed upon a verdict?

The Foreman.—We have. (The verdict was thereupon handed to the Court, by him read and passed to the clerk, who recorded the same upon the minutes of the Court.)

The Clerk (reading from the minutes).—" We, the jury, find the three defendants guilty as charged.  J. M. Rucker, foreman."  So say you all?   (Answers in the affirmative.)

At the request of defendant's attorney, the jury was polled, and each of the jurors stated that the foregoing was his verdict.

Without any comment upon the *confusion* which pervades the scene thus photographed, produced in part at least by numerous ˙interruptions and persistent argumentation—not to mention the kindly efforts of counsel to relieve the Judge of the labor of instructing the jury by discharging that judicial function for him—it clearly appears from the colloquy above reported, that the questions of the jurors had reference to the instruction already given and recited above—in itself clearly expressed and easily understood—and would have been fully

answered by its substantial repetition. The jurors were entitled to a confirmation or else a modification of the legal proposition contained in that instruction; they were not supplied with either, in unambiguous terms, but were furnished instead with a finding of fact. The language employed by some of the jurors also conveyed a very plain intimation that they had already reached the conclusion, upon the evidence, that defendants when arrested were severally conducting separate games. The statement of a juror, * * * "but there was two games of the same kind," was immediately followed by the remark of the Court, "There could be two dealers and only one game." This remark—as well as the previous declarations of the Court, "the same game can be carried on at two tables," and "the same game can be played at the same time at two separate tables, and yet constitute the same game"—could only have been understood as a statement of a *fact*, and was therefore violative of the Constitution. (Art. vi, § 19.) It was more than an abstract speculation, based *a priori* upon the illimitable possibilities. The exigencies of the case did not demand of the Court or jury to hazard a conjecture, that amongst the innumerable modes by which men, civilized and savage, indulge their passion for gambling, there *might be* a game of chance conducted contemporaneously by *two dealers*. Gambling in the concrete was before the Court and jury, the spirit of gambling as materialized in tan.

The suggestion that the Court below only intended to say that two dealers and two tables did not conclusively establish more than one game, and the jury were still at liberty to find but one game, will not remove the vice of the charge. And this, for at least two reasons: First, the question is not what the Court *intended* to say, but what the Court said; and second, inasmuch as the evidence tended to prove that defendants were severally engaged in distinct transactions, while there was no evidence tending to prove that the two transactions constituted *one game*, the instruction—if it had been what it is suggested it was intended to be—would have been inapplicable to the facts, and liable to the objection that it might mislead the jury. No expert had sworn that there could be two dealers in one game of tan; and if an expert had so sworn, the Court would not have

been justified in assuming that the witness testified to the truth. Nor was the game fully explained by the witnesses, or its peculiarities agreed upon. Unless, therefore, the Court could take judicial notice of its constituent elements, and was also authorized to inform the jury as to what they were, it was error to charge the jury that there might be one game of tan conducted by two dealers at two tables and at the same time.

Judgment and order reversed, and cause remanded for a new trial.

Ross, J., and McKee, J., concurred.